UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN RUDEEN,<br>    *Plaintiff*,<br><br>*v.*<br><br>ALLSTATE INSURANCE CO., THE HANOVER INSURANCE CO., MASSACHUSETTS BAY INSURANCE CO., AND UTICA FIRST INSURANCE CO.<br>    *Defendants*. | No. 3:16-cv-1827 (MPS) |

## RULING ON MOTIONS TO DISMISS

This is one of many recent cases in this district alleging that insurers have wrongly denied coverage for damage to the foundations of plaintiffs' homes caused by defective concrete from the J.J. Mottes Concrete Company. Susan Rudeen filed this action in state court against the four homeowners' insurance companies that insured her home at various intervals from 1996 to the present—Allstate Insurance Co., the Hanover Insurance Co., Massachusetts Bay Insurance Co., and Utica First Insurance Co.—alleging that their refusal to cover damage to her basement walls from this faulty concrete breached the policies and violated other legal duties. (ECF No. 1.) Allstate removed the case to this court on November 7, 2016. (*Id.*) Allstate and Utica First now have moved to dismiss Rudeen's amended complaint, arguing that Rudeen has failed to allege facts that would bring her claimed losses within the coverage afforded by their homeowners' insurance policies. (ECF Nos. 26, 28, 36) For the reasons that follow, I GRANT Allstate's motion to dismiss and DENY Utica First's.

I.     **Factual Allegations**

According to the allegations in the complaint, Allstate Insurance Co. (Allstate) insured Susan Rudeen's home at 30 Harriet Drive in Coventry, Connecticut from 1996 through 2002. (ECF

1

No. 26 at ¶¶ 8–9.) Rudeen made all required insurance payments during that period. (*Id.* at ¶ 10.) Hanover Insurance Co. insured Rudeen's home from 2002 through 2005, and Rudeen made all required insurance payments during that time. (*Id* at ¶¶ 60–61.) Massachusetts Bay Insurance Co. insured Rudeen's home from 2005 through 2014, and Rudeen made all required insurance payments during that time. (*Id.* at ¶¶ 84–85.) Utica First Insurance Co. (Utica First) has insured Rudeen's home from 2016 through the present, and Rudeen made all required insurance payments during that time. (*Id.* at ¶¶ 108–09.)

"In mid to late October of 2015," Rudeen "noticed that the basement walls in the addition of her home had a series of horizontal and vertical cracks." (ECF No. 26 at ¶ 11.) The addition was built in the mid-1980s. (*Id.* at ¶ 8.) "In response to noticing this degradation, the plaintiff undertook an investigation of this condition, its cause, and the method of repair by consulting with contractors and engineers in late 2015 and early 2016." (*Id.* at ¶ 12.) "Upon further inquiry into the cause of the decay," Rudeen "discovered that the form of 'pattern cracking' found in the basement walls of the addition was due to a chemical compound found in certain concrete walls constructed in the late 1980s and early 1990s with concrete most likely from the J.J. Mottes Concrete Company." (*Id.* at ¶ 13.) She alleges that "[t]he aggregate used by the J.J. Mottes Concrete Company in manufacturing the concrete in that particular time period contained a chemical compound which, with its mixture with the water, sand[,] and cement necessary to form the concrete, began to oxidize (rust) and expand, breaking the bonds of the concrete and reducing it to rubble." (*Id.* at ¶ 14.) She states that "[t]here is no known scientific or engineering method or process which is effective in reversing the decay[;] it continues to advance with or without the presence of visible water." (*Id.* at ¶ 15.)

Rudeen claims that "[a]t some point between the date on which the basement walls were poured and the month of October[] 2015, the basement walls of the addition suffered a substantial impairment to their structural integrity." (ECF No. 26 at ¶ 16.) She alleges that "[i]t is only a question of time until the basement walls of the addition to [her] home will fall in due to the exterior pressure from the surrounding soil." (*Id.* at ¶ 16.) "With the falling in of the basement walls of the addition, the entire addition will fall into the basement." (*Id.* at ¶ 18.) She also alleges that "[w]hile the process of decay occurs over the course of years, ultimately resulting in substantial impairment and complete degradation, it may cause sudden events throughout the course of decay." (*Id.* at ¶ 19.) "As the chemical reaction progresses and the strength of the wall weakens, external forces may cause a series of sudden events where the walls bulge and shift in some increment or pieces of concrete become dislodged and fall to the floor." (*Id.* at ¶ 20.)

A. <u>Specific Allegations and Claims against Allstate</u>

On May 5, 2016, "after consulting with an engineer familiar with the condition present in her home," Rudeen "promptly notified Allstate . . . of the condition of the basement walls in the addition." (ECF No. 26 at ¶ 21.) She alleges that "[b]y notifying Allstate of the condition, the plaintiff made a timely claim for coverage of the loss in accordance with the terms of all the homeowner[s'] policies issued to her by Allstate." (*Id.* at ¶ 22.) Allstate denied her claim on October 6, 2016. (*Id.* at ¶ 26.) She claims that this breached her homeowners' policies with Allstate and that the cost of replacing the basement walls will be at least $150,000. (*Id.* at ¶¶ 31–32.)

Rudeen also alleges that Allstate participates in the Insurance Services Office, Inc. (ISO), a cooperative organization of insurers that "collect[s] data on the type of claims made, the policy provisions cited for the basis of each claim, the geographic areas in which the claimed damage has occurred, and the actions taken by insurers in response to such claims." (ECF No. 26 at ¶ 45.)

Rudeen alleges that, through participation in ISO, Allstate had knowledge of "the number of claims" in northeastern Connecticut resulting from similar concrete decay. (*Id.* at ¶ 48.)

Rudeen alleges that Allstate "denied coverage by citing to policy exclusions that are wholly inapplicable to the damage suffered to the basement walls of [her] home." (ECF No. 26 at ¶ 35.) She states that "Allstate intentionally cited policy exclusions wholly inapplicable to [her] claim for coverage knowing full well that [Rudeen], like most insureds, is unsophisticated with respect to the complex language contained in insurance policies." (*Id.* at ¶ 36.) She claims that "[t]hrough the ISO, Allstate has knowledge of cases such as *Bacewicz v. NGM Insurance* . . . where the plaintiffs were awarded judgment against the insurer on a concrete decay claim based on policy language nearly identical to that in the plaintiff's policies." (*Id.* at ¶ 50.) According to Rudeen, Allstate "has a general business practice of acting intentionally to mislead insureds into believing that the collapse of basement walls of a building caused by hidden decay or by the use of faulty or defective materials or methods of construction is not a covered loss." (*Id.* at ¶ 40.)

Based on these allegations, Rudeen seeks a declaratory judgment that Allstate has a duty to provide coverage and has brought claims of breach of contract, breach of the covenant of good faith and fair dealing, and violation of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. §§ 38a-815 et seq., (CUIPA) and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq., (CUTPA) against Allstate. Allstate has moved to dismiss all of these claims. (ECF No. 28.)

B. Specific Allegations and Claims Against Utica First

On or about May 5, 2016, "after consulting with an engineer familiar with the condition present in her home," Rudeen "promptly notified Utica . . . of the condition of the basement walls in the addition." (ECF No. 26 at ¶ 119.) She alleges that "[b]y notifying Utica of the condition, the

4

plaintiff made a timely claim for coverage of the loss in accordance with the terms of all the homeowner's policies issued to her by Utica." (*Id.* at ¶ 120.) Utica First denied her claim on July 11, 2016. (*Id.* at ¶ 121.) Rudeen alleges that "[t]he grounds offered by Utica for the denial of coverage are contrary to the express provisions of the homeowners' policies issued to the plaintiff" and that "[i]n denying coverage . . . Utica breached its contract[ual] obligations under the homeowners' policies issued to" Rudeen. (*Id.* at ¶¶ 124–25.)

Rudeen alleges that Utica "denied coverage by citing to policy exclusions that are wholly inapplicable to the damage suffered to the basement walls of [her] home." (ECF No. 26 at ¶ 129.) Rudeen further alleges that "Utica intentionally cited policy exclusions wholly inapplicable to [her] claim for coverage knowing full well that [Rudeen], like most insureds, is unsophisticated with respect to the complex language contained in insurance policies." (*Id.* at ¶ 130.) She states that Utica First "acted intentionally to mislead the plaintiff and convince her that the damage suffered to her home was not covered solely to preserve its own assets by avoiding payment for a covered loss. (*Id.* at ¶ 131.) She alleges that "deny[ing] coverage by relying upon inapplicable policy exclusions" is Utica First's "general business practice" and is "evidenced by Utica's neglect or refusal to provide coverage for at least one . . . other homeowner affected with the same damage" as Rudeen. (*Id.* at ¶ 140 (citing *Michael Willenborg, et al. v. Unitrin Preferred Ins. Co., et al.*, Tolland Superior Court Docket No. TTD-CV-16-6010936-S).)

Based on these allegations, Rudeen has brought claims of breach of contract, breach of the covenant of good faith and fair dealing, and violation of CUIPA and CUTPA against Utica First. Utica First has moved to dismiss all of these claims. (ECF No. 36.)

II.  **Legal Standard**

A.  <u>Motion to Dismiss</u>

Under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under *Twombly*, the Court accepts as true all of the complaint's factual allegations—but not conclusory allegations—when evaluating a motion to dismiss. *Twombly*, 550 U.S. at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant defendants['] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp.2d 191, 198 (D. Conn. 2004). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, No. 09-cv-1412 (JFK), 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010).

In deciding a Rule 12(b)(6) motion, I may consider documents attached to, integral to, or incorporated by reference in the complaint. *See* Fed. R. Civ. P. 10(c); *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotations omitted).

B. <u>Interpreting Insurance Policies</u>

"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract." *Connecticut Medical Ins. Co. v. Kulikowski,* 286 Conn. 1, 5 (2008) (citation and quotation marks omitted).

> If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning . . . . When interpreting an insurance policy, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result…. As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy.

*Id.* at 5–6 (citations, quotation marks, and alterations omitted).

**III. Analysis**

    A.    <u>Allstate's Motion to Dismiss</u>

Allstate has moved to dismiss all of Rudeen's claims against it. It argues that the unambiguous language of its policy does not cover Rudeen's alleged loss and that, because the policy does not afford coverage, Rudeen has failed to state a claim for breach of contract, breach of the implied covenant of good faith and fair dealing, or a violation of CUIPA or CUTPA, and has failed to show that the Court should enter a declaratory judgment in her favor. (*See* ECF No. 28 at 2.) For the reasons that follow, I agree.

        1.    *Breach of Contract*

            a.    <u>Applicable Policy</u>

Although Allstate insured Rudeen's home from 1996 through 2002 (ECF No. 26 at ¶ 9), Allstate attached a single policy (the Allstate Policy)—effective beginning May 3, 2001—to its motion to dismiss. (ECF No. 29-3.) Rudeen does not allege that a policy other than the Allstate Policy applies to her claims or that Allstate incorrectly relied on that policy in its denial letter.

Rather, Rudeen relies on the provisions of the Allstate Policy throughout her response. (*See* ECF No. 34.) As a result, although Rudeen did not attach the Allstate Policy to her complaint, that policy is integral to her claims, and I must decide whether she has stated plausible claims in light of that policy.

The Allstate Policy has three "Sections." (ECF No. 29-3 at 24–25.) "Section I – Your Property," which addresses property coverage, contains the following subsections: "Coverage A Dwelling Protection," "Coverage B Other Structures Protection," "Coverage C Personal Property Protection," "Additional Protection," and "Section I—Conditions." (*Id.* at 24.) Under "Section I – Your Property," the Policy states:

> Losses We Cover Under Coverages A and B: We will cover sudden and accidental direct physical loss to property as described in Coverage A—Dwelling Protection and Coverage B—Other Structures Protection except as limited or excluded in this policy.

(*Id.* at 29.) The Policy continues:

> Losses We Do Not Cover Under Coverages A and B: We do not cover loss to the property described in Coverage A—Dwelling Protection or Coverage B—Other Structures Protection consisting of or caused by:
> . . . .
>
> 12. Collapse, except as specifically provided in Section I—Additional Protection, under item 11, "Collapse."
> . . .
>
> In addition, we do not cover loss consisting of or caused by any of the following:
>
> 15. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
> . . .
> d) rust or other corrosion, mold, wet or dry rot;
> . . .
> g) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
> . . . .

8

22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
. . .
c) materials used on repair, construction, renovation or remodeling . . . .

(*Id.* at 30–31.)

The "Additional Protection" portion of Section I states in pertinent part:

> 11. Collapse
> We will cover:
> (a) the entire collapse of a covered building structure;
> (b) the entire collapse of part of a covered building structure; and
> (c) direct physical loss to covered property caused by (a) or (b) above.
>
> For coverage to apply, the collapse of a building structure specified in (a) or (b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
> . . .
> (b) hidden decay of the building structure;
> (c) hidden damage to the building structure caused by insects or vermin;
> . . .
> (f) defective methods or materials used in construction, repair, remodeling or renovation.
>
> Collapse does not include settling, cracking, shrinking, bulging or expansion.

(ECF No. 29-3 at 38.)

### b. "Collapse" Coverage

Rudeen claims that her alleged loss is covered under the above-quoted collapse provision located under "Section I, 'Additional Protection'" of the Policy. (ECF No. 29-3 at 38 ¶ 11.) The section on "Collapse" specifies that, "[f]or coverage to apply, the collapse of a building structure . . . must be a sudden and accidental direct physical loss." (*Id.*) Rudeen argues that "the terms of the [Allstate Policy] appear to provide coverage for the collapse of a building structure . . . or part of a building structure," and that the Policy does not define "collapse," a term the Connecticut Supreme Court has already defined broadly to mean "a substantial impairment to the structural

9

integrity" of a building. (ECF no. 34 at 6 (citing *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246, 252 (1987).) Rudeen argues that her complaint alleges such a structural impairment caused by one of two "enumerated perils" set forth in the "collapse" provisions of the Allstate Policy, i.e., "hidden decay" or "defective methods or materials" used in the construction of the home. (*Id.*; ECF No. 26 at 16.) Rudeen further argues that, although the policy states that a covered collapse must be "a sudden and accidental direct physical loss," the term "sudden" is ambiguous and does not necessarily denote temporal abruptness, because many of the enumerated perils in the collapse provision "contemplate damage occurring over a period of time." (ECF No. 34 at 8.) Finally, Rudeen argues that, even if "sudden" means temporally abrupt, her complaint passes muster because it includes allegations that "the process of decay," though occurring "over the course of years," may cause sudden events, "such as bulging and shifting of walls" and "pieces of concrete becom[ing] dislodged and fall[ing] to the floor." (ECF Nos. 34 at 12, 26 at ¶¶ 19–20.) I do not find these arguments to be persuasive.

In the context of an insurance policy involving "sudden and accidental" pollution, the Connecticut Supreme Court held that "sudden" "included a temporal quality, which requires that the onset of the release in question occurs quickly or happens abruptly." *Buell Indus., Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 536 (2002). Reviewing dictionary definitions, the Court "acknowledge[d] that, the word sudden can be used to describe the unexpected nature, as well as abrupt onset, of the event being described." *Id.* at 540 (emphasis added). But it concluded that in the context of the phrase "sudden and accidental," "accidental" already included an element of unexpectedness and thus "sudden" had to be accorded a temporal element to avoid rendering it mere surplussage. *Id.* at 540–41.

Following the logic of *Buell*, this Court and state trial courts have ruled in favor of insurance companies in concrete decay cases where insurance policies require "sudden and accidental" losses or otherwise contain language requiring that the loss be temporally abrupt, including in cases involving the policy language at issue here. *See, e.g.*, *Manseau v. Allstate Ins. Co.*, 16-cv-1231 (MPS), 2017 WL 3821791, at *3–*5 (D. Conn. Aug. 31, 2017) (granting Allstate's motion to dismiss where policy required a "sudden and accidental direct physical loss"); *Adams v. Allstate Ins. Co.*, No. 3:16-CV-1360 (JBA), 2017 WL 3763837, at *4 (D. Conn. Aug. 29, 2017) (same); *Clough v. Allstate Ins. Co.*, No. 3:17-CV-140 (JBA), 2017 WL 3763841, at *5 (D. Conn. Aug. 29, 2017) (same); *Miller v. Allstate Ins. Co.*, No. 3:16-CV-2059 (JBA), 2017 WL 3763425, at *4 (D. Conn. Aug. 29, 2017) (same); *Metsack v. Liberty Mut. Fire Ins. Co.*, No. 3:14-CV-1150 (VLB), 2017 WL 706599, at *7 (D. Conn. Feb. 21, 2017) (granting motion for summary judgment where policy required a "sudden and accidental direct physical loss"); *Alexander v. General Ins. Co. of America*, No. 3:16-CV-59 (SRU), transcript of oral ruling, ECF No. 22 at 23 (D. Conn. July 7, 2016) (granting motion to dismiss where policy at issue defined collapse as an "abrupt falling down or caving in"); *Jemiola v. Hartford Cas. Ins. Co.*, No. CV-15-6008837-S, 2017 WL 1258778, at *1 (Conn. Super. Ct. Mar. 2, 2017) (granting summary judgment where policy defined collapse as "an abrupt falling down or caving in"); *Toomey v. Central Mut. Ins. Co.*, Docket No. CV-15-6009841-S (Conn. Super. Ct. Aug. 3, 2017) (unpublished) (granting summary judgment where policy defined collapse as "an abrupt falling down or caving in"). I, again, reach the same conclusion here: "sudden," as used in the phrase "the collapse of a building structure . . . must be a sudden and accidental direct physical loss," unambiguously refers to a temporally abrupt event.

Rudeen's argument that the term "sudden" is ambiguous because some of the covered causes of collapse, such as "hidden decay" and "hidden insect infestation," occur gradually rests on a misreading of the plain language of the Allstate Policy. (ECF No. 41 at 14–15.) That language makes clear that it is the "collapse" that must be "sudden," not the cause of the collapse. (ECF No. 29-3 at 38 ("[T]he collapse . . . must be a sudden and accidental direct physical loss caused by . . . hidden decay of the building structure.").) The Court in *Alexander* explained it as follows during a colloquy with plaintiff's counsel:

> Mr. Lindequist: But the collapse has to be caused by one of the enumerated perils, one of which is the cave[-in] that is hidden from view . . . .
>
> The Court: So here we go. Let's use insect damage. There's termites in the house. No collapse. They're eating away; every day they're eating away. No collapse. Finally, they eat enough that the beam fails. . . . Now there's coverage. Now you have a collapse or falling in. The fact that it was caused by termites and it was a slow process doesn't mean you didn't have an abrupt collapse . . . ."

*Alexander v. General Ins. Co. of America*, No. 3:16-cv-59, transcript of oral ruling, ECF No. 22-2 at 13–14 (D. Conn. July 7, 2016).[1] The Allstate Policy unambiguously affords coverage once the specified hidden processes, such as decay or insect infestation, result in a sudden and accidental collapse. *See id.* at 13–14; *see also Metsack v. Liberty Mut. Fire Ins. Co.*, No. 14-cv-1150 (VLB), 2017 WL 706599, at *7 (D. Conn. Feb. 21, 2017).[2]

---

[1] I recognize that the policy language in *Alexander* was somewhat different than that at issue here, but the point is that there is nothing necessarily ambiguous about a provision that affords coverage for temporally abrupt events caused by gradual processes.

[2] In support of her position, Rudeen urges the Court to adopt the reasoning of *Kelly v. Balboa Ins. Co.*, 897 F. Supp. 2d 1262, 1268 (M.D. Fla. 2012) (denying summary judgment, in part by finding that the inclusion of "sudden" in the definition of "loss" in a policy that covers insect damage rendered the provision ambiguous). Unlike the Connecticut Supreme Court's decision in *Buell*, the *Kelly* decision is not binding on this court. I therefore agree with other courts in this District, holding that, in this context, "sudden" unambiguously means temporally abrupt. Rudeen also relies on *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88 (2d Cir. 2009), where the court concluded that a "collapse" provision did not require a sudden event to afford coverage. By its own terms, however, *Dalton* is distinguishable because the collapse provision there made no mention of a "sudden" event and did not otherwise qualify the term "collapse" except to exclude bulging, shrinking, and cracking. 557 F.3d at 90.

Because "sudden," as used in the collapse provision of the Allstate Policy, unambiguously means temporally abrupt, Rudeen must have plausibly alleged that her claimed loss occurred abruptly—not merely unexpectedly—for coverage to have applied. Even when her allegations are construed in the light most favorable to her, Rudeen has not alleged plausibly that any damage to her home occurred temporally abruptly. To the contrary, the loss described in the complaint has involved a "process of decay occur[ring] over the course of years." (ECF No. 26 at ¶ 19.) While Rudeen does allege that "[a]s the chemical reaction progresses and the strength of the wall weakens, external forces *may cause* a series of sudden events where the walls bulge and shift in some increment or pieces of concrete become dislodged and fall to the floor" (ECF No. 26 at ¶ 20 (emphasis added)), at most that statement alleges that the gradual process of decay she describes *could possibly* cause visible effects that happen temporally abruptly; she does not allege that any such temporally abrupt events have actually occurred in her house. Further, her allegation that "[i]t is only a question of time until the basement walls of the addition to [Rudeen's] home will fall in due to the exterior pressure from the surrounding soil" only underscores that the loss here involves a gradual process rather than a sudden event. (*Id.* at ¶ 17.) These allegations do not set forth a plausible claim that she has suffered "a sudden and accidental direct physical loss." (ECF No. 29-3 at 38 ¶ 11.)

Further, the Allstate Policy specifies that "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion." (ECF No. 29-3 at 29 ¶ 5.) In addition to alleging that her basement walls are progressively deteriorating (which falls outside the definition of "collapse" for the reasons discussed above), Rudeen alleges that the basement walls of her addition displayed "a series of horizontal and vertical cracks." (ECF No. 26 at ¶ 11.) The cracking Rudeen alleges to have occurred falls squarely within the specific exclusion for "settling, cracking, shrinking,

13

bulging or expansion" in the Allstate Policy's "collapse" provision. (ECF No. 29-3 at 29 ¶ 5.) As a result, Rudeen's claim that the loss alleged is covered as a "collapse" is implausible. For these reasons, her breach of contract claim and her claim for a declaratory judgment both fail.

### 2. *Implied Covenant of Good Faith and Fair Dealing*

Allstate also has moved to dismiss Count Two, which alleges breach of the implied covenant of good faith and fair dealing. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432 (2004) (internal citations, quotation marks, and alterations omitted). To maintain a claim for breach of the implied covenant of good faith and fair dealing, Rudeen must plausibly allege that Allstate acted in bad faith in wrongfully denying coverage for the alleged loss. *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 794–95 (2013) ("To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." (alterations omitted)). "[V]iolations of express duties are necessary to maintain a bad faith cause of action." *Id.* at 797. As a result, the implied covenant of good faith and fair dealing "is not implicated by conduct that does not impair contractual rights." *Id*. at 795.

Rudeen has alleged that she expected to receive benefits under the Allstate Policy and that Allstate "acted in bad faith" by "citing to policy exclusions that are wholly inapplicable to the damage suffered to the basement walls of the plaintiff's home." (ECF No. 26 at ¶¶ 33–41.) Because I find that Rudeen fails to state a plausible claim for breach of contract against Allstate and that

14

Allstate's conduct therefore did not impair her contractual rights under the Allstate Policy, her claim for breach of the implied covenant of good faith and fair dealing also fails.

### 3. CUIPA/CUTPA

Finally, Allstate also moves to dismiss Count Three, which alleges a violation of CUIPA and CUTPA. "A plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision." *Karas v. Liberty Ins. Corp.*, 33 F. Supp.3d 110, 117 (D. Conn. 2014). To state a CUIPA/CUTPA claim, the plaintiff must plausibly allege that Allstate "engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged." *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014). Rudeen relies on a CUIPA provision making it an unfair insurance practice to fail to attempt "in good faith to effectuate prompt, fair[,] and equitable settlements of claims in which liability has become reasonably clear." (ECF No. 26 at ¶ 56. (citing Conn. Gen. Stat. § 38a-816(6)(F).) She alleges that Allstate gave her a "false and misleading reason for the denial of coverage", "has regularly been engaged in refusing to attempt in good faith to effectuate prompt, fair[,] and equitable settlements of concrete decay claims", and had knowledge of numerous claims and lawsuits resulting from similar concrete decay through participation in the ISO. (ECF No. 26 at ¶¶ 45–54). But refusing to settle a claim that the plain terms of the Allstate Policy do not cover is not an unfair insurance practice. And because Allstate's interpretation of its policy is correct, there can be no violation of CUIPA/CUTPA. *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 378 (2008) (affirming dismissal of CUIPA/CUTPA claim after determining that defendant insurer's interpretation of an insurance policy was correct). Rudeen's CUIPA/CUTPA claim is therefore dismissed.

### B. <u>Utica First's Motion to Dismiss</u>

Utica First also has moved to dismiss all of Rudeen's claims against it. It argues that Rudeen's loss was excluded from its policy coverage in unambiguous terms and thus that Rudeen has failed to state claims for breach of contract, breach of the implied covenant of good faith and fair dealing, or for a violation of CUIPA or CUTPA. (*See* ECF No. 36 at 1–2.) For the reasons that follow, this motion is denied.

   *1. Breach of Contract*

The parties do not agree that the 2015–2016 policy Utica First attached to its motion to dismiss is the only applicable policy. Rudeen alleges that Utica First insured her home "between the years of 2016 and the present." (ECF No. 26 at ¶ 108.) She alleges that she noticed the "series of horizontal and vertical cracks" at issue in "mid to late October of 2015." (*Id.* at ¶ 110.) She states that she "undertook an investigation of this condition . . . in late 2015 and early 2016" (*id.* at ¶ 111) and that she "made a timely claim for coverage of the loss in accordance with the terms of all *the homeowner's policies* issued to her by Utica" by "promptly notif[ying] Utica on or about May 5, 2016 of the condition of the basement walls in the addition." (*Id.* at ¶¶ 119–120 (emphasis added).) She also alleges that "[t]he grounds offered by Utica for the denial of coverage are contrary to the express provision of the *homeowners policies* issued to the plaintiff" and that Utica "breached its contractual obligations under the *homeowners' policies* issued to the plaintiff." (*Id.* at ¶¶ 124–25 (emphases added).)

Utica First attached to its motion to dismiss a homeowners' policy Rudeen purchased from it in 2015 (the Utica First Policy). (ECF No. 36 at 18–19.) The Utica First Policy was effective from May 7, 2015 until May 7, 2016. (*Id.* at 8.) In her opposition brief, Rudeen argues that Utica First "offers no legal authority or analysis suggesting that this is the sole policy triggered by the progressive decay condition alleged in the First Amended Complaint, nor does Utica offer any

16

authority or analysis suggesting that the . . . claimed loss occurred during the period of this policy. Utica's policy is an occurrence[-]based policy and applies only to losses that occur during the policy period." (ECF No. 39 at 7 (citing ECF No. 36 at 1).) Utica First did not file a reply and thus has made no attempt to show that the 2015–2016 policy is the only policy applicable to Rudeen's claim or that her claimed loss is not covered under any subsequent policy. Therefore, drawing all inferences in Rudeen's favor, I find that she has alleged that the damage is continuing and potentially covered by more than one Utica First Policy, including one that is not before the Court.

Even if it was clear that the Utica First Policy was the only one that applied to Rudeen's claims, again drawing all inferences in Rudeen's favor, I find that that Policy is ambiguous and must be construed in her favor. *Connecticut Medical Ins. Co.,* 286 Conn. at 5. The Utica First Policy states, under Coverage A, that it "cover[s] the residence . . . on the insured premises"—a term that includes "additions and built-in components . . ." (ECF No. 36 at 54)—"for risks of direct physical loss unless specifically excluded." (ECF No. 36 at 57). The complaint plausibly pleads a "risk[] of direct physical loss" to an "addition," and the only specific exclusion on which Utica First relies—"[w]e do not pay for loss *caused by* the settling, cracking, shrinking, bulging[,] or expanding of a building structure or mobile home, pavements, patios[,] or other outdoor structures" (*id.* at 57 (emphasis added)—does not unambiguously foreclose coverage of the alleged loss. Specifically, Rudeen argues that the above-quoted exclusion for cracking is inapplicable to her claim because she "does not allege that the cracking was caused by cracking" but that "the cracking condition is caused by decay and consists of the impairment of the structural integrity. . . . [She] merely alleges that the decay condition results in the manifestation of cracking on the face of the concrete." (ECF No. 39 at 9.) Drawing all inferences in Rudeen's favor, I agree that her allegations—which include that "the form of pattern cracking found in the basement walls of the

17

addition was due to a chemical compound found [in concrete supplied by the J.J. Mottes Company]" (ECF No. 26 at ¶ 13)—fall outside the exclusion on which Utica First relies. Although some courts in this district have suggested that policy language excluding losses "consisting of or or "caused by . . . cracking" excluded coverage for concrete decay, the exclusion in the Utica First Policy language is notably narrower, making no mention of losses "consisting of cracking." *See Adams v. Allstate Ins. Co.*, 276 F. Supp.3d 1, 5 (D. Conn. 2017) (granting insurer's motion to dismiss and noting that policy "explicitly excludes coverage for losses "consisting of" or "caused by" "settling, cracking, shrinking, bulging or expansion of ... foundations, walls, floors, roofs or ceilings"); *Clough v. Allstate Ins. Co.*, 279 F. Supp.3d 387, 392 (D. Conn. 2017) (same); *Miller v. Allstate Ins. Co.*, 279 F. Supp.3d 381, 386 (D. Conn. 2017). Because Rudeen's alleged loss was a "direct physical loss" and was not "caused by" cracking, it sets forth a plausible claim for coverage. Therefore, drawing all inferences in Rudeen's favor, I DENY Utica First's motion to dismiss Rudeen's breach of contract claim.

2. *Implied Covenant of Good Faith and Fair Dealing*

Rudeen has alleged that she expected to receive benefits under the Utica First Policy and that Utica First "acted in bad faith" by "citing to policy exclusions that are wholly inapplicable to the damage suffered to the basement walls of the plaintiff's home." (ECF No. 26 at ¶¶ 33–41.) As I have already found, Rudeen has stated a plausible claim for breach of contract against Utica First. She also has alleged that Utica First "intentionally cited policy exclusions wholly inapplicable to the plaintiff's claim for coverage knowing full well that the plaintiff, like most insureds, is unsophisticated with respect to the complex language contained in insurance policies." (ECF No. 26 at ¶ 130.) Under the law stated above in reference to Rudeen's claims against Allstate, this suffices to allege a claim for breach of the covenant of good faith and fair dealing because Rudeen

18

has alleged that Utica First took actions to "allegedly impede[] [Rudeen's] right to receive benefits" and that those actions were "taken in bad faith." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 794–95 (2013) Therefore, I DENY Utica First's motion to dismiss this claim as well.

### 3. CUIPA/CUTPA

Finally, Rudeen again relies on a CUIPA provision making it an unfair insurance practice to fail to attempt "in good faith to effectuate prompt, fair[,] and equitable settlements of claims in which liability has become reasonably clear" to bring a CUIPA/CUTPA claim against Utica First, based on this alleged breach of contract. (ECF No. 26 at ¶ 141. (citing Conn. Gen. Stat. § 38a-816(6)(F).) She alleges that Utica First "has failed to effectuate prompt, fair[,] and equitable settlement of the plaintiff's claim by failing to provide coverage despite the lack of an applicable policy exclusion" and that this is an example of the "general business practice" of Utica. (ECF No. 26 at ¶¶ 138–139.) She supports her allegation that this is a general business practice by citing a case in which Utica First denied coverage to "at least one [] other homeowner affected with the same damage as that suffered by the plaintiff." (*Id.* at ¶ 140 (citing a Connecticut Superior Court case, *Michael Willenborg, et al. v. Unitrin Preferred Ins. Co., et al.,* Tolland Superior Court Docket No. TTD-CV-16-6010938-S).)

Under the law stated above in relation to the CUIPA/CUTPA claim against Allstate, because I find that Rudeen has stated a plausible claim for breach of contract and because she has made these additional allegations regarding a general business practice and cited at least one other similar denial of coverage in support of that allegation, Rudeen's CUIPA/CUTPA claim against Utica First is plausible. Therefore, I DENY Utica First's motion to dismiss the CUIPA/CUTPA claim.

## IV. Conclusion

For the reasons stated above, I GRANT Allstate's motion to dismiss Counts I through IV of the Amended Complaint (ECF No. 28) and DENY Utica First's motion to dismiss Counts VII through IX of the Amended Complaint. (ECF No. 36.) Because no other claims remain against it, the Clerk's office is instructed to terminate Allstate from the case.

It is SO ORDERED.

                                                  /s/
                                     Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
             March 20, 2018